(C. D. 279)

W. R. ZANES AND CO. v. UNITED STATES

United States Customs Court, Third Division

(Decided January 23, 1940)

*Little & Metzler* (*W. Clint Little* of counsel) for the plaintiffs.
*Webster J. Oliver*, Assistant Attorney General (*Charles J. Miville*, special attorney), for the defendant.

Before CLINE, EVANS, and KEEFE, Judges.

KEEFE, Judge: This case involves the duty levied by the collector at Galveston upon certain liquors claimed to have been lost through breakage before importation and upon 17½ gallons thereof that were recovered and subsequently abandoned for destruction under customs supervision.

The facts of the case were agreed upon between counsel for the respective parties as follows:

1. That the warehouse entry no. 210 was made May 11, 1936.

2. That the merchandise consisting of 830 cases of whiskey and covered by warehouse entry no. 210 was discharged from the vessel to the dock May 13, 1936.

3. That a partial inspection of the apparently damaged cases was made on the dock by the discharging inspector on May 13, 1936, and on that date he inspected 21 cases in which 122 bottles were broken.

4. That it was not possible to inspect every case on the dock where some damage was apparent as requested by the importer for the purpose of having all exceptions noted by the discharging inspector, because of lack of facilities.

5. That on May 13, 1936, 824 cases were sent to bonded warehouse where complete inspection was subsequently made in accordance with importers request, which request was made upon being informed complete inspection could not be made on the dock.

6. That the balance of 6 cases were sent to Appraiser's stores for the purpose of examination and appraisement.

7. That a complete inspection was made in the warehouse and upon completion of the inspection on May 20, 1936, breakage was found in accordance with report filed by the inspector verified by affidavit filed by importer May 22, 1936, which affidavit was certified as correct by inspector.

8. That the 6 cases taken to the Appraiser's stores for the purpose of examination and appraisement were delivered to the warehouse on May 26, 1936.

9. That the inspector's return dated May 20, 1936, also showed approximately 17½ gallons of bulk whiskey remained on hand, which had been obtained from broken bottles which had contents partly lost and partly remaining in the broken bottles.

10. That on July 20, 1937, application was made to the collector by letter to destroy the 17½ gallons of whiskey salvaged because recovered from broken bottles and contained broken glass. January 24, 1938, Collector replied to letter stating that application should be made on form 3499. Form 3499 was duly filed January 26, 1938, and approved the day filed.

11. That the 17½ gallons of whiskey above referred to was destroyed under customs supervision on January 26, 1938, at 3:55 P. M.

12. That the 17½ gallons of whiskey above referred to was not abandoned in the original packages.

13. That the Internal Revenue Tax was allowed on the 418 bottles found broken.

At the trial the plaintiffs offered in evidence the entry papers, the affidavit of the importer, the return of the inspector showing the amount of breakage, and the application filed with the collector to destroy part of the liquor, which was subsequently granted.

The record discloses that the inspector's report, as well as the affidavit verifying the same, showed the entire breakage amounted to 418 bottles, 376 of which were qualified as being 10 per centum or more of the value of cases in which they were broken. From the broken bottles was obtained approximately 17½ gallons of bulk whisky, which had not been lost by reason of the breakage. Relative to the whisky found in the broken bottles, an application was made for permission to destroy the 17½ gallons of bulk whisky as the same contained broken glass and was unfit for human consumption. The formal application to destroy the liquor was approved and the whisky was destroyed under customs supervision the same day the application was filed.

The collector refused to make an allowance in duty on liquidation for the 376 bottles that qualified as being 10 per centum or more of the value of the liquor contained in the cases in which they were imported for the reason that the whisky had been delivered to the storekeeper on May 13, 1936, and the importers' affidavit was not filed until May 22, 1936, which was not within a period of 5 days after delivery, as required by articles 816 and 817 of the Customs Regulations of 1931, and paragraph 813 of the Tariff Act of 1930. The collector also refused to make allowance in liquidation for the 17½ gallons of bulk whisky that had been destroyed under customs supervision because the whisky had not been abandoned while in the original packages as required by article 808 (c) of the Customs Regulations of 1931 and section 563 (b) of the Tariff Act of 1930.

Paragraph 813 of the Tariff Act of 1930 relative to breakage provides as follows:

PAR. 813. There shall be no constructive or other allowance for breakage, leakage, or damage on wines, liquors, cordials, or distilled spirits, except that when it shall appear to the collector of customs from the gauger's return, verified by an affidavit by the importer to be filed within five days after the delivery of the merchandise, that a cask or package has been broken or otherwise injured in transit from a foreign port and as a result thereof a part of its contents, amounting to 10 per centum or more of the total value of the contents of the said cask or package in its condition as exported, has been lost, allowance therefor may be made in the liquidation of the duties.

Article 817 of the Customs Regulations of 1931, provides as follows:

Art. 817. Definitions—Outages.—(a) "Delivery" shall be construed to be effected at the time when merchandise is actually delivered by the carrier or on its order either directly to the importer or to the storekeeper in charge of a bonded warehouse. Where gauging is delayed until after the merchandise has been deposited in a bonded warehouse, date of delivery shall be construed to be the date of the completion of the gauging. Allowance shall be made only for such losses as occurred prior to the gauging of the merchandise.

The merchandise in question was ordered sent to the warehouse for examination of the portion of the liquor that was broken and lost in transit. Examination was completed in the warehouse on May 20, 1936, and breakage was found in accordance with report of the inspector verified by an affidavit of the importers on May 22, 1936, 2 days after the completion of the inspection thereof. The collector refused to make allowance in the duties for the reason that delivery of the merchandise was figured from May 13, 1936, the date of delivery to the warehouse, and the affidavit required to be filed within 5 days therefrom would be 4 days too late. Article 813, *supra*, specifically states that the word "Delivery" shall be construed to be effected, at the date of the completion of the gauging where gauging is delayed until after the merchandise has been deposited in a bonded warehouse.

Therefore the date of delivery of the merchandise in question was effected on May 22, 1936, and the affidavit of the importers filed on May 24 is within the terms of the statute. Hence the importers are clearly entitled to an allowance in duties upon the liquor lost through breakage in the 376 bottles qualified as being 10 per centum or more of the value of the cases.

The remaining question for consideration is the refusal of the collector to grant an allowance in duties for the portion of the merchandise, to wit, 17½ gallons, destroyed under customs supervision. Permission was requested to destroy said liquor, which was granted by the collector, and the same was actually emptied into the sewer in the presence of the deputy collector in charge, at 3:55 p. m. on January 26, 1938. However, the collector stated that the whisky was not abandoned in the original packages, referring to article 808 (c) of the Customs Regulations of 1931 and section 563 (b) of the Tariff Act of 1930.

Section 563 (b) relates to the abandonment of merchandise to the Government and specifies that any merchandise so abandoned shall not be less than an entire package and shall be abandoned in the original package without having been repacked while in a bonded warehouse. However, the merchandise in question was not abandoned to the Government. The application made and granted by the collector related to the destruction of the merchandise, and section 557 of the act of 1930 relating to destruction of merchandise in warehouse provides as follows:

SEC. 557.  ENTRY FOR WAREHOUSE—WAREHOUSE PERIOD—DRAW-BACK.

\* \* \* \* \* \* \*

Merchandise entered under bond, under any provision of law, may, upon payment of all charges other than duty on the merchandise, be destroyed, at the request and at the expense of the consignee, within the bonded period under customs supervision, in lieu of exportation, and upon such destruction the entry of such merchandise shall be liquidated without payment of duty and any duties collected shall be refunded.

Section 557 is clear and unambiguous in its terms, and where the above conditions are complied with it is mandatory upon the collector to liquidate without payment of duty.

For the reasons stated, judgment will be entered in favor of the plaintiffs directing the collector to reliquidate the entry and make refund of all duty taken upon the contents of 376 bottles of liquor and upon 17½ gallons destroyed under customs supervision.